**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Agilysys, Inc., an Ohio corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>Clark Vipond, an Arizona citizen; and NVision Networking, Inc., an Arizona corporation,<br><br>      Defendants. | No. CV-04-2023-PHX-DGC<br><br>**ORDER** |

Pending before the Court are the parties' motions for partial summary judgment on Plaintiff's tort claims. Dkt. ##80, 91, 94. Also pending are Defendants' motions partial for summary judgment on Plaintiff's punitive damages claim. Dkt. ##184, 186. For the reasons set forth below, the Court will deny summary judgment on the tort claims and grant summary judgment in Defendants' favor on the punitive damages claim.

**I.  Background.**

Plaintiff is a distributor and reseller of computer hardware, software, and services. Plaintiff relies on its account executives to acquire and service new and existing customer accounts. Plaintiff hired Defendant Clark Vipond ("Vipond") as an account executive for its Arizona territory on March 6, 2000. Vipond signed Plaintiff's non-disclosure policy and

agreed to comply with the terms and conditions of the policy. Plaintiff and Vipond agreed that Vipond would service certain customers, including the Maricopa County Community College District ("District"), as an account executive.

Vipond submitted a written resignation letter to Plaintiff on June 4, 2004, stating that his employment with Plaintiff would continue for an additional two weeks. Upon his resignation, Vipond informed Plaintiff that he was accepting a position with Defendant NVision Networking, Inc. ("NVision"), one of Plaintiff's competitors.

Plaintiff commenced this action by filing a verified complaint on September 27, 2004. Dkt. #1. The complaint asserts five causes of action: breach of the duty of loyalty and breach of the non-disclosure policy against Vipond, and tortious interference with business relationships, unfair competition, and misappropriation of trade secrets against both Vipond and NVision. *Id.* Plaintiff alleges, among other things, that prior to his resignation Vipond improperly diverted the District's business from Plaintiff to NVision and did so with NVision's knowledge and consent. *Id.* Plaintiff seeks both compensatory and punitive damages. *Id.*

On August 17, 2005, Plaintiff filed a motion for partial summary judgment on its tort claims. Dkt. #80. On September 30, 2005, NVision filed a cross motion for summary judgment on all claims against it and Vipond filed a cross motion for partial summary judgment on the breach of the non-disclosure policy and tortious interference with business relationship claims. Dkt. ##91, 94.

The case was reassigned from Judge Earl Carroll to Judge Neil Wake on May 24, 2006. Dkt. #153. Judge Wake held a hearing on the summary judgment motions on July 7, 2006. Dkt. #170; *see* Dkt. #180 (Hr'g Tr.). Judge Wake granted summary judgment in Defendants' favor on the claims for breach of the non-disclosure policy, unfair competition, and misappropriation of trade secrets. Dkt. #180 at 59; *see* Dkt. #170. With respect to the remaining tort claims – breach of the duty of loyalty and intentional interference with business relationships – Judge Wake stated that he believed there was no genuine dispute as to whether Defendants' conduct was improper. *Id.* at 59-62. Judge Wake reserved making

1 a ruling on these tort claims, however, because the parties had not fully briefed the causation
2 issue. *Id.* Plaintiff cited a Missouri case in it reply brief for the proposition that Defendants'
3 alleged wrongful conduct was sufficient to create liability even if Plaintiff could not establish
4 causation. Dkt. #102 at 13 (citing *Mills v. Murray*, 472 S.W.2d 6, 16-17 (Mo. Ct. App.
5 1971); *see* Dkt. #180 at 44-47. Stating that neither side cited any Arizona case law on this
6 issue, Judge Wake ordered additional briefing on the specific legal question of whether
7 Vipond's alleged breach of the duty of loyalty "does or does not have the effect of rendering
8 the wrongdoing, the disloyal employee, liable for business not gotten where the wrongful
9 conduct played a role but where it is debatable whether even absent the wrongful conduct the
10 customer might have gone elsewhere." Dkt. #180 at 61-62; *see id.* at 45. Judge Wake also
11 permitted Defendants to file motions for partial summary judgment on Plaintiff's punitive
12 damages claim because it appeared to Judge Wake that Defendants' alleged conduct did not
13 warrant an award of punitive damages as a matter of law. *Id.* at 65.

14 On July 27, 2006, Judge Wake recused himself and the case was randomly reassigned
15 to the undersigned Judge. Dkt. #181. The parties subsequently filed briefs regarding the
16 causation issue and Defendants filed motions for partial summary judgment on punitive
17 damages. Dkt. ##183-91.

18 **II.     Summary Judgment Standard.**

19 Summary judgment is appropriate if the evidence, viewed in the light most favorable
20 to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and
21 that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
22 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might
23 affect the outcome of the suit . . . will properly preclude the entry of summary judgment."
24 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be
25 "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.
26 Summary judgment may be entered against a party who "fails to make a showing sufficient
27 to establish the existence of an element essential to that party's case, and on which that party
28 will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Analysis.

#### A. Plaintiff's Tort Claims.

Having considered the parties' summary judgment motions and supplemental briefs, the Court concludes that causation is an essential element of Plaintiff's tort claims and that Defendants' alleged wrongful conduct, standing alone, is insufficient to create tort liability. *See generally Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 207 (Ariz. 1992) ("A successful plaintiff is . . . entitled to ordinary tort damages – all damages *legally caused by the tort*.") (emphasis added); *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 343 (Ariz. Ct. App. 1997) ("[T]ort damages comprehend all damages 'legally caused' by the tort.") (citations omitted).

Under Arizona law, an employee owes his employer a duty of loyalty that includes a duty not to compete with the employer as to matters for which he has been employed. *See McAllister Co. v. Kastella*, 825 P.2d 980, 982-83 (Ariz. Ct. App. 1992) (citing Restatement (Second) of Agency § 393 (1958)); *Evans v. Valley Radiologists, Ltd.*, 619 P.2d 5, 9 (Ariz. 1980). An employee breaches this duty by improperly soliciting the business of his employer's customers prior to the termination of his employment. *See McAllister Co.*, 825 P.2d at 982-83. The employee is subject to liability, however, only for the loss caused to the employer by the breach of the duty of loyalty. *See* Restatement (Second) of Agency § 401, cmt. b (1958) (stating that an agent's breach of his duties that results in no loss to the principal may not subject the agent to tort liability).

The essential elements of a tortious interference claim are: (1) a valid business relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional and improper interference inducing or causing a termination of the relationship, (4) resultant damage to the party whose relationship has been terminated. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981) (citing Restatement (Second) of Torts § 766 (1977)); *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041-43 (Ariz. 1985), *superseded in other respects by* A.R.S. § 23-1501; *see also Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1023-24 (9th Cir. 2000) (citing

*Wagenseller*). An alleged interferor is thus liable only for the damage caused by or resulting from his improper interference. *See id.*; *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, ¶ 13 (Ariz. 2005) ("We have 'long recognized' that a person who intentionally interferes with contractual relationships between other parties can be held liable under certain circumstances to a party *injured by the interference*.") (emphasis added); *Middleton v. Wallichs Music & Entm't Co.*, 536 P.2d 1072, 1076 (Ariz. Ct. App. 1975) (holding that the defendants were not liable as a matter of law where "it was very obvious that the affirmative, initiating and inducing action responsible for the assumed breach of the restrictive covenant originated with, and flowed from, the lessor, not from the [defendants]"); *see also S. Union Co. v. S.W. Gas Corp.*, 180 F. Supp. 2d 1021, 1047 (D. Ariz. 2002) (stating that *Middleton* "confirms that tort liability cannot be shown where the contracting party would have breached regardless of the defendant's conduct").

Plaintiff's reliance on *Mills* is misplaced. Nothing in *Mills* or any other case cited by Plaintiff supports the proposition that a breach of a duty of loyalty or an improper interference with a business relationship is actionable without the causation element required in tort actions. *See* Dkt. #183. Plaintiff is not required to show that NVision could not possibly have obtained the District's business but for the alleged wrongful conduct. *See Mills*, 472 S.W.2d at 17 (citing *DeLong Corp. v. Lucas*, 278 F.2d 804, 810-11 (2d Cir. 1960)). But Plaintiff does have the burden of showing that Defendants' alleged wrongful conduct was a substantial factor in Plaintiff's loss of the District's business. *See Standard Chartered PLC*, 945 P.2d at 343 ("To legally cause damage, the tort must be a 'a substantial factor in bringing about the harm.'") (citations omitted); *Smith v. Johnson*, 899 P.2d 199, 202 (Ariz. Ct. App. 1995) (stating that a tort plaintiff "must show a reasonable connection between the defendant's act or omission and the plaintiff's injury or damages"); Restatement (Second) of Torts § 431 (1977) (tortious conduct is a legal cause of harm to another if the conduct is a substantial factor in bringing about the harm).

The Court further concludes that there are genuine issues of fact with respect to causation. Plaintiff has presented evidence that it had a longstanding business relationship

1 with the District and that, prior to the alleged wrongful conduct, NVision and the District had
2 no such relationship. Defendants have presented evidence that, regardless of the alleged
3 wrongful conduct, the District would not have continued its business relationship with
4 Plaintiff after Vipond resigned because Plaintiff unreasonably demanded that the District
5 alter its standard terms and conditions and provided the District with an unqualified account
6 executive replacement. These fact issues must be resolved a jury. *See Ferguson v. Cash,*
7 *Sullivan & Cross Ins. Agency, Inc.*, 831 P.2d 380, 385 (Ariz. Ct. App. 1991) (stating that
8 "proximate cause is normally a question for the jury"); *First Nat'l Bank of Ariz. v. Otis*
9 *Elevator Co.*, 406 P.2d 430, 434 (Ariz. Ct. App. 1965) (stating that the "question of
10 proximate causation is one of fact for the jury"). The Court accordingly will deny summary
11 judgment with respect to Plaintiff's tort claims. *See Employers Reinsurance Corp. v. GMAC*
12 *Ins.*, 308 F. Supp. 2d 1010, 1015 (D. Ariz. 2004) (denying summary judgment on tortious
13 interference claim because there were genuine issues of material fact regarding causation and
14 damages).

15 **B. Plaintiff's Punitive Damages Claim.**

16 Plaintiff contends that Vipond's breach of his duty of loyalty and Defendants'
17 interference with Plaintiff's business relationships "would support a jury award of punitive
18 damages." Dkt. #188 at 2. To recover punitive damages under Arizona law, however,
19 "something more is required over and above the 'mere commission of a tort.'" *Linthicum*
20 *v. Nationwide Life Ins. Co.*, 723 P.2d 675, 679 (Ariz. 1986) (quoting *Rawlings v. Apodaca*,
21 726 P.2d 565, 578 (Ariz. 1986)). "That is, 'a plaintiff must prove by clear and convincing
22 evidence that the defendant engaged in aggravated and outrageous conduct with an evil
23 mind.'" *Saucedo v. Sinaloa*, 24 P.3d 1274, 1277 ¶ 11 (Ariz. Ct. App. 2001) (citations
24 omitted). This is so because punitive damages "primarily further the same objectives
25 underlying criminal law: punishing the defendant and deterring the defendant and others
26 from future misconduct." *Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 86 (Ariz. 1987).
27 Plaintiff has presented no evidence from which a jury reasonably could conclude that
28 Defendants "engaged in aggravated and outrageous conduct with an evil mind.'" *Saucedo*,

24 P.3d ¶ 11; *see Linthicum*, 723 P.2d at 680 ("We hold that before a jury may award punitive damages there must be evidence of an 'evil mind' and aggravated and outrageous conduct."). The Court accordingly will grant summary judgment in Defendants' favor on the punitive damages claim.

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment (Dkt. #80) is **denied**.

2. Defendants' motions for summary judgment (Dkt. ##91, 94) are **denied in part** with respect to Plaintiff's tort claims.

3. Defendants' motions for partial summary judgment on punitive damages (Dkt. ##184, 186) are **granted**.

4. The Court will set a Final Pretrial Conference by separate order. At the Final Pretrial Conference, the Court will schedule a firm date for trial.

DATED this 13th day of September, 2006.

David G. Campbell
United States District Judge